1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH LEDESMA, an individual; and        No.  2:17-cv-00106-MCE-CKD
     JEANNIE LEDESMA, an individual,
12
              Plaintiffs,
13                                              **MEMORANDUM AND ORDER**
14        v.

15   CITY OF VALLEJO, a municipal
     corporation, ROBERT DeMARCO,
16   individually and in his official capacity
     as Police Officer for the CITY OF
17   VALLEJO; AMANDA BLAIN,
     individually and in her official capacity
18   as Police Officer for the CITY OF
     VALLEJO; and DOES 1-50, individually
19   and in their official capacities as Police
     Officers for the CITY OF VALLEJO,
20   jointly and severally,

21            Defendants.

22        Through the present lawsuit, Plaintiffs Joseph Ledesma ("Joseph") and Jeannie

23   Ledesma ("Jeannie") seek damages as a result of a beating Joseph claims he received

24   after two City of Vallejo police officers, Defendants Robert DeMarco ("DeMarco") and

25   Amanda Blain ("Blain"), responded to a domestic violence altercation at the Ledesma

26   home.  Joseph asserts causes of action under 42 U.S.C. § 1983, and for violation of

27   California's Bane Act as codified at California Civil Code § 52.1, as well as state

28   common law claims for negligence and battery.  Jeannie, for her part, alleges claims for

                                          1

negligence and negligent infliction of emotional distress, only.  In addition to the above-named officers, the City of Vallejo is also included as a Defendant.

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56,[1] or alternatively for partial summary judgment as to Plaintiffs' particular causes of action.  Defendants first assert that Plaintiffs' claims are precluded in their entirety pursuant to the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994) (hereinafter referred to as "Heck").  Alternatively, even if the claims are not foreclosed by Heck, Defendants DeMarco and Blain claim they are precluded by the doctrine of qualified immunity in any event.  Finally, to the extent Plaintiffs allege that Defendant City of Vallejo is itself liable for having fostered a policy or practice that abrogated Plaintiffs' constitutional rights, the City claims that no such policy or practice has been identified.  For the reasons set forth below, Defendants' Motion is DENIED.[2]

**BACKGROUND**

This case arises from an incident that occurred on December 8, 2015.  Jeannie allegedly asked a friend to call 911 because Jeannie's husband, Joseph, threw her keys outside, was threatening her, and refused to leave.  Officers DeMarco and Blain responded to the call and went to the Ledesma residence located at 101 Tanglewood Court in Vallejo.

Upon arrival, Blain went to speak with Jeannie.  DeMarco, for his part, decided to question Joseph, who was in the process of towing a trailer away from the house.   At this point the respective parties' version of just what occurred widely diverges.  Joseph claims that when he did not immediately exit his vehicle, DeMarco pointed his gun and ordered him to do so.  Joseph Dep., ECF No. 23-2, 29:6-24.  Once Joseph was outside,

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

Plaintiffs' two pit bulls came running from behind the house through an open gate. Both Plaintiffs indicate that both dogs were friendly and had never threatened or bitten anyone. Id. at 33:9-11; 58:24-59:2, Jeannie Dep., ECF No. 23-3, 56:18-57:10. Despite Jeannie's claim that the female dog, Bella, ran out with its tail wagging and never exhibited any aggressive behavior (Jeannie Dep., 24:15-18), Jeannie testified that DeMarco nonetheless repeatedly tased the animal. Id. at 25:17-25. DeMarco, for his part, claims he only tased Bella once because he believed the dog was going to attack. DeMarco Dep., ECF No. 23-5, 52:5-7. According to DeMarco, Joseph did not even get out of his truck until after the dog was tased, and he then walked across the front yard some 35-50 feet to where DeMarco was standing. See Police Report, Ex. G to Decl. of Joni Brown, ECF No. 16-4, pp. 1-2; see also DeMarco Dep., 45:5-16; 53:2-17; 57:3-10.

There appears to be no dispute that Joseph was upset since he believed that DeMarco had actually shot the dog. In response, however, DeMarco claims that Joseph advanced on him in a threatening manner and appeared to assume a fighting posture. DeMarco Dep 63:7-22. As a preemptive measure, DeMarco states he used an asp, or collapsible metal baton, to establish distance between him and Joseph. He struck Joseph in the left arm area. Police Report, p. 2; see also DeMarco Dep., 64:21-65:6. When Joseph failed to comply with DeMarco's demand that he get to the ground, DeMarco claims he struck Joseph with his baton two additional times, once to the right leg and once to the left. Only after those additional blows were delivered did Joseph fall to the ground. Because Joseph continued to resist and kicked DeMarco, DeMarco states he delivered two more baton strikes to Joseph's lower leg area. Police Report, p. 2.[3]

///

///

---

[3] DeMarco's testimony at deposition differed with regard to the baton blows he administered. He estimated the first three blows, delivered while Joseph was still standing, were to Joseph's arms. DeMarco Dep., 69:5-17. To the extent his testimony diverged from the information contained in the Police Report, however, DeMarco conceded that the Report "would probably more accurately reflect what happened" since it was prepared shortly after the incident. Id. at 100:1-7.

At this point, it appears that Blain deployed her taser in order to help get Joseph under control. According to DeMarco, however, the initial taser strike still did not incapacitate Joseph. DeMarco Dep., 75:6-9.

The supplemental statement attributed to Blain in the Police Report indicates that she tased Joseph when she saw him attempt to kick DeMarco. Police Report, p. 3. According to the Report, because this initial tase failed to have much effect, Blain followed up with two additional shots in stun mode, once to the lower extremity and finally to the upper shoulder before she and DeMarco were able to take Joseph into custody. Id. Significantly, however, Blain's account of what transpired differs markedly from DeMarco's since she believed Joseph "swung" at DeMarco before DeMarco initially hit him with the baton. Blain Dep., 39:19-40:11.

Even more importantly, Joseph himself presents a version of events strikingly different than that offered by either DeMarco or Blain. Joseph states that after getting out of his vehicle at gunpoint, his dogs came running over and that DeMarco tased the larger, female animal. While admittedly concerned because he thought the dog had been shot, Joseph denies ever assuming a fighting posture, and states he was simply scared for his dog. Joseph Dep., 138:15-2. Jeannie also denies ever seeing her husband fighting with the Officer. Jeannie Dep., 31:9-12. When Joseph reached over to try to retract the taser barbs from the dog's fur, he was suddenly tased from behind. See Joseph Dep., 37:19-37. This immediately took Joseph to the ground, and he then realized we was repeatedly being hit by DeMarco with the baton. Id. at 35:1-12. Joseph denies swinging or lunging at DeMarco, claiming only that he reached over to pull the taser prongs from his dog. Id. at 137:9-23; 53:3-9. Joseph estimated that some 20-30 blows were administered, causing him to curl up on his back into a fetal position where he used his arms to protect his head from DeMarco's blows. See id. at 35:8-12; 36:7-15; 44:20-22; 76:4-6.

Although Jeannie did not apparently witness the entire scuffle (having walked away to put Bella into her husband's truck), she observed at least twelve blows as

4

Joseph was covering his face:  Jeannie Dep., 28:23-29:30.  As a result, Officer

DeMarco's collapsible baton broke:  it was bent to the extent it could no longer be

retracted.   De Marco Dep., 125:19-23; Joseph Dep., 35:22.  In addition, once Joseph

was taken to the hospital after being arrested and booked it was determined that both

arms had been broken in multiple places, and that one of shins had been fractured.

Joseph Dep., 35:10-12; Jeannie Dep., 33:25-34:6.  While both officers were wearing

lapel cameras, it appears they turned those devices off after initially responding to the

call and did not reactivate them until after the altercation with Joseph had concluded.

See Blain Dep., 28:21-30:2.

Following his altercation with the police, Joseph was charged with a one-count

misdemeanor violation of California Penal Code § 69, resisting a peace officer by threat

or violence.  During a plea agreement accepted by the court, Joseph pled no contest to

the addition of a second count, for disturbing the peace by unlawfully fighting in a public

place or challenging another person to fight, in violation of Penal Code § 415(1).  As part

of that agreement, the first count of the original indictment was dismissed.

Plaintiffs filed the present lawsuit on January 17, 2017.


**STANDARD**


The Federal Rules of Civil Procedure provide for summary judgment when "the

movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or

defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

move for summary judgment, identifying each claim or defense—or the part of each

claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the

6

party producing it, upon whom the <u>onus</u> of proof is imposed." <u>Anderson</u>, 477 U.S. at 251

(quoting <u>Improvement Co. v. Munson</u>, 81 U.S. 442, 448 (1871)) (emphasis in original).

As the Supreme Court explained, "[w]hen the moving party has carried its burden under

Rule [56(a)], its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  Therefore,

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial.'" <u>Id.</u> at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to

be believed, and all reasonable inferences that may be drawn from the facts placed

before the court must be drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at

255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn.

<u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>,

810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.      Whether Joseph's Claims Are Foreclosed By <u>Heck</u>**

Under the Supreme Court's 1994 decision in <u>Heck v. Humphrey</u>, a plaintiff cannot

maintain a lawsuit seeking damages under 42 U.S.C. § 1983 if success in that lawsuit

would "necessarily imply" the invalidity of a related prior criminal conviction, <u>Heck</u>,

512 U.S. at 487.  Thus, a claim is barred under <u>Heck</u> if the plaintiff "would have to negate

an element of the offense of which he has been convicted" (<u>id.</u> at 486 n. 6) or make

specific factual allegations inconsistent with his criminal conviction.  <u>Cunningham v.</u>

<u>Gates</u>, 312 F.3d 1148, 1154 (9th Cir. 2002).

According to Defendants, Joseph's claims predicated on excessive force are

precluded by his conviction, following a plea of nolo contendere, for disturbing the peace

under California Penal Code § 415(1).  Defendants correctly point out that while a nolo

plea is not an admission of guilt, "for purposes of the <u>Heck</u> analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or jury verdict of guilty." <u>Nuno v. County of San Bernardino</u>, 58 F. Supp. 2d 1127, 1135 (C.D. Cal. 1999); <u>see also</u> <u>Szajer v. City of Los Angeles</u>, 632 F.3d 607 (9th Cir. 2011) (no contest plea to illegal possession of a firearm barred civil rights action premised on illegal search).

Defendants argue that Joseph's excessive force allegations hinge on a claim that he did not approach Officer DeMarco in a fighting manner or offer any resistance during the resulting altercation. Because Joseph pled no contest to the subsection of the California's disturbing the peace statute that prohibits "unlawfully fight[ing] in a public place or challeng[ing] another person in a public place to fight," Defendants assert that the <u>Heck</u> bar applies. Defendants are incorrect.

First, Defendants assert that it is plain from the record that Joseph's no contest plea of disturbing the peace pertained to the interaction he had with the two officers. The Court disagrees. Joseph himself appears to claim that the plea agreement he entered into related to the verbal dispute he had with his wife that led Jeannie to call law enforcement in the first place. <u>See</u> Pls.' Opp., 9:17-18. In rejecting that argument, Defendants point to the fact that the original Misdemeanor Complaint filed against Joseph specifically referred to his acts in deterring and preventing DeMarco from carrying out his duties on the day in question. Misdemeanor Complaint, Ex. H. to Decl. of Katelyn Knight, ECF 16-3. The Complaint, however, included only a single count for violation of California Penal Code § 69, resisting an officer. In the court proceedings in which Joseph pled no contest, the prosecution amended the Complaint to add a separate and second count, for disturbing the peace, and Joseph pled nolo to only that second charge, with the first count for resisting an officer being specifically dismissed. <u>See</u> March 10, 2017 hearing transcript, Ex. G. to the Knight Decl., 3:19-5:5. The factual basis for the Second Count is not specified in the hearing transcript, so it remains less than clear as to whom the disturbing the peace charge pertained. Given that

uncertainty, this Court cannot conclude as a matter of law that Joseph's no contest plea even related to the officers, let alone triggered Heck.

Second, even if Joseph's plea did relate to his altercation with Officers DeMarco and Blain, the fact that he now argues that the officers used excessive force in ultimately bringing him into submission does not necessarily imply the invalidity of his conviction, thereby invoking Heck.  The officers themselves admit that the altercation did not even begin until after they had determined that no underlying crime had been committed.  See DeMarco Dep., 50:9-22.  The situation nonetheless ultimately escalated into a situation where Joseph was clubbed and tased numerous times to the extent that he sustained multiple fractures to both arms and to his shin.  Joseph's claim that this level of force was excessive under the circumstances, if successful, does not by definition negate the validity of his conviction for having some role in causing the incident.  Consequently, Heck preclusion does not apply.

### B.    Qualified Immunity

Defendants DeMarco and Blain claim they are entitled to qualified immunity from any liability under 42 U.S.C. § 1873 because their conduct did not violate any "clearly established" constitutional or statutory right.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  As the Supreme Court has explained, "[t]his exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" City & County of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)).  Making a determination as to whether immunity applies requires a two-prong inquiry into 1) whether the facts, taken in the light most favorable to the non-moving party, demonstrate that the government officials in question, here the two officers, violated a constitutional right; and 2) whether the right so violated was clearly established at the time of the challenged conduct.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).  For a right to be clearly established, "existing ///

precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018).

Turning first to the predicate violation, Joseph alleges that DeMarco and Blain violated his rights under the Fourth Amendment of the United States Constitution, as applied to state actors under § 1983. The Fourth Amendment's prohibition against unreasonable seizures has been held to apply to claims of excessive force by peace officers. Scott v. Harris, 440 U.S. 372, 381-82 (2007). Police use of force violates the Fourth Amendment if it is objectively unreasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 388 (1989). Reasonableness in this regard is assessed by balancing "the nature and quality of the intrusion on the individuals Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396. Consequently, whether an officer's conduct is reasonable entails a consideration of all objective facts and circumstances confronting the officer on the scene (Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005)), including whether the individual whose rights were allegedly violated posed an immediate threat to the safety of either the officer or others. S.B. v. County of San Diego, 864 F.3d 1010, 1013 (9th Cir. 2017).

In the present matter we have sharply differing versions of events offered by Plaintiffs, on the one hand, and the Officer Defendants on the other, virtually from the very onset of the events underlying this lawsuit. Significantly, because the disagreement between Joseph and Jeannie that led to the police being summoned in the first place appears to have largely resolved by the time the officers arrived, with both officers concluding that no crime had been committed, it appears that no ongoing disturbance was present. What triggered the subsequent altercation between the officers and Joseph appears to relate to Plaintiffs' two pit bulls, which both Plaintiffs testified were friendly and non-menacing as they came running out of the yard despite the officers' claim that one of the dogs started to growl as it came towards them. Police Report, p. 1. The dispute as to that dog's involvement continues as Plaintiffs claim the animal was tased multiple times, whereas DeMarco claims he stunned the dog only once.

The factual discrepancies further multiply as the parties' description of events continued to unfold. Joseph states that after being ordered out of his truck at gunpoint by DeMarco, he simply reached over to remove taser prongs from his dog's fur before being tased from behind and immediately hitting the ground. At that point, Joseph claims he was clubbed up to 20-30 times by DeMarco's baton despite offering no resistance. Although Jeannie did not witness the entire incident, she indicates she did not see her husband fighting either DeMarco or Blain as the altercation continued. Nevertheless, Joseph was not only struck multiple times by DeMarco but the blows were hard enough not only to break both arms in multiple places, and fracture Joseph's shin, but also to break DeMarco's baton itself.

The Court recognizes that the officers present a starkly different account of what happened. Even they, however, do not agree on what precipitated the use of force. DeMarco claims that Joseph assumed a "fighting stance", apparently because he was upset about his dog, before DeMarco began to wield his baton. Blain, however, claims that Joseph actually threw a punch before the melee ensued. Importantly, too, Defendants' version of just what force was used is inconsistent. DeMarco believed he hit Joseph only five times, with most of the blows landing on his lower body area, although his account at deposition differed from what he claimed took place in the Police Report. In any event, DeMarco's claims appear to be at odds with the multiple fractures sustained by Joseph.

Giving Joseph's version of events the benefit of the doubt by resolving all inferences in his favor as the nonmoving party,[4] as we must in construing whether a constitutional or statutory violation occurred for purposes of qualified immunity, the Court must conclude that a violation occurred, at least for qualified immunity purposes.

///

---

[4] The Court recognizes that Plaintiffs failed to submit a formal response to Defendants' Statement of Undisputed Facts in this matter, as required by E.D. Local Rule 260(b). Nonetheless, in determining whether summary judgment should be granted, the Court must independently determine the propriety of such relief and it has done so by reviewing the deposition testimony and evidence cited and produced by both parties.

We next look to the second prong of the requisite qualified immunity analysis; namely, whether assuming a violation did occur that violation ran afoul of clearly established law. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 137 S. Ct. 548, 551 (2018). As indicated above, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 138 S. Ct. at 1152.

Here, Defendants claim that because "there is no precedent holding that an officer violates clearly established law by using a baton to subdue an individual who is advancing on him to fight," not to mention when that individual fails to comply with lawful commands, Defendants' use of force here cannot run afoul of clearly established legal rights. While that proposition is correct in the abstract, it assumes that Defendants' version of events must necessarily be accepted. For the same reasons already set forth above, the chasm that exists between the parties' respective version of events precludes this Court from finding that their conduct failed to violate clearly established rights of which they should have been aware. Therefore, the second prong for establishing Defendants' entitlement to qualified immunity cannot be satisfied either.

## C. City of Vallejo's <u>Monell</u> Liability

Defendant the City of Vallejo correctly points out that, as a municipality, it is generally not subject to liability under 42 U.S.C. § 1983 for the alleged unconstitutional acts of an employee under the doctrine established by the Supreme Court in Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Monell nonetheless recognizes an exception where the alleged constitutional violation was caused by "a policy, practice, or custom of the entity", or was the result of an order by a policy-making officer. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011); Gibson v. County of Washoe, 290 F.3d 1175, 1186 (9th Cir. 2002).

The City of Vallejo claims that Joseph has identified no such policy, practice or custom giving rise to liability on its part. Joseph nonetheless alleges that police reports

as produced by the City are "in stark contrast with the photographic and medical evidence and Mr. Ledesma's injuries" (Pls.' Opp. 20:3-4), and that supervisory personnel who approved Plaintiffs' report failed to note "the obvious discrepancies between the officers' version of events and the Plaintiff's injuries." Id. at 20:6-8.[5]  Plaintiffs further assert that neither officer activated their lapel cameras at the time of the altercation, but were "not disciplined or retrained on the importance of utilizing the tools available to document citizen contact, justify force, and/or secure criminal convictions." Id. at 20:8-12).  While it is true that a single incident normally does not suffice for purposes of asserting a Monell claim, the Court believes that Joseph's allegations, particularly when considered together, preclude summary judgment and mandate that the issue of the City's liability be determined by the trier of fact.

### D.    Plaintiffs' Common Law State Claims

As indicated above, in addition to Joseph's claim under 42 U.S.C. § 1983 he also asserts common law state claims for negligence and for battery, and Jeannie asserts a claim for negligent infliction of emotional distress as a result of witnessing the injuries inflicted on her husband.  Defendants assert that a finding that DeMarco and Blain did not use unreasonable force in taking Joseph into custody precludes these tort causes of action.  Because, for the reasons outlined above, the Court cannot make that determination on the record before it, Defendants' challenge to those claims necessarily fails.

### E.    Liability under California's Bane Act

In addition to his federal civil rights claim and the common law state causes of action discussed above, Plaintiffs also assert a cause of action under the California's Bane Act as codified at Civil Code § 52.1.  The Bane Act establishes redress for the interference of rights guaranteed by the Constitution of laws of the United States by a person or person who interferes with those rights "by threat, intimidation, or coercion."

---

[5] DeMarco conceded at his deposition that he had no conversation with his supervisors or anyone at the Police Department with respect to whether his report was consistent with Mr. Ledesma's injuries. DeMarco Dep., 118:20-119:2.

13

Cal. Civ. Code § 52.1.  The Ninth Circuit has recently recognized that the Bane Act can extend to claims based on alleged excessive force, and that a plaintiff need not show "coercion" separately from the coercion inherent in the use of such force, so long as "the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure."  <u>Reese v; City of Sacramento</u>, 888 F.3d 1030, 1043 (9th Cir. 2018).  Defendants argue that because the circumstances here do not lend themselves to any such conclusion, no liability under the Bane Act may be had.  Again, because of the diametrically opposed version of events offered by the parties, the Court disagrees.  Resolving all inferences in Plaintiffs' favor, as the Court must do on summary judgment, precludes the Court from finding that the officers' use of force was reasonable, or that they did not specifically intend to violate Joseph's rights.  Therefore, judgment cannot be rendered in Defendants' favor on the Bane Act claim.

**CONCLUSION**

For all the foregoing reasons, Defendants' Motion for Summary Judgment, or in the Alternative Partial Summary Judgment (ECF No. 16) is DENIED in its entirety.

IT IS SO ORDERED.

Dated:  February 25, 2019

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE